FILED
02 OCT -1 AM 10: 57
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT L. JOHNSON, | ) |
| Plaintiff, | ) |
| vs. | ) CV-98-AR-0982-S |
| OFFICER JILL FISHER, ET AL., | ) |
| Defendants. | ) |

ENTERED
OCT 1 2002

### MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Robert L. Johnson, alleges that his constitutional rights were violated during his incarceration in the Jefferson County Jail in Birmingham, Alabama. Plaintiff is presently incarcerated in the William E. Donaldson Correctional Facility. The *pro se* complaint was filed on April 23, 1998. Amended complaints, also filed *pro se*, were filed on May 29, 1998 and September 10, 1998. Plaintiff names as defendants Officer Jill Fisher, Officer Parnell, Dr. Ned Whitehead, Nurse Brenda Alexander, Officer James Morrow,[1] and Sheriff Jim Woodward.[2] Plaintiff seeks monetary damages.

On June 29, 2000, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint. On August 23, 2000, a special

---

[1] The court notes that in his complaint, plaintiff erroneously identified defendant Morrow as Officer Monroe.

[2] It is noted that although Nurse Charmie Johnson was named as a defendant in this action when filed, Nurse Johnson and all claims against her were dismissed without prejudice by Order entered December 10, 2001 (Document # 31).



to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On June 1, 1997, plaintiff went to a Crown Service Station to purchase a pack of cigarettes (plaintiff's complaint page three). On that same day, Robert E. Self and William E. Hamilton, police officers with the Birmingham Police Department, were dispatched on a robbery call to the Crown Service Station at 4301 Vanderbilt Road, Birmingham, Alabama (Officer Self's affidavit page one and Officer Hamilton's affidavit page one). Upon his arrival at the service station, Officer Self was advised by the cashier, Julie Farrow, and a witness, Lola Monroe, that plaintiff had entered the store, bought a pack of cigarettes, and then pointed a handgun at Ms. Farrow and told her to give him the money (Officer Self's affidavit page one). Ms. Farrow gave the robber the money and then asked if he

wanted anything else. The robber replied that he wanted more cigarettes which were given to him (Officer Self's affidavit page one). The robber then walked away. The suspect's physical description was given to Officer Hamilton by the robbery victim and Officer Hamilton observed a person fitting the description in the alley of the 3800 block of 43rd Avenue North acting suspiciously (Officer Hamilton's affidavit page one). As Officer Hamilton approached the suspect, he began to run. Officer Hamilton caught the suspect between a house and the Crown Service Station. Officer Self arrived and helped Officer Hamilton place the suspect in custody (Officer Self's affidavit page one and Officer Hamilton's affidavit page one). Plaintiff was ordered to get down on the ground (plaintiff's complaint page four). Plaintiff refused to follow verbal commands, resisted arrest and kicked Officers Self and Hamilton (Officer Self's affidavit page one and Officer Hamilton's affidavit page one). The officers sprayed plaintiff with mace and he was handcuffed (plaintiff's complaint page four, Officer Self's affidavit page one, and Officer Hamilton's affidavit page one). Officer Self conducted a pat-down search and discovered a .22 caliber Phoenix Arms semi-automatic pistol in plaintiff's right front pocket (Officer Self's affidavit page one and Officer Hamilton's affidavit page one). Plaintiff also had possession of the money and the merchandise which were taken in the service station robbery (Officer Self's affidavit page one). The officers took plaintiff back to the service station (plaintiff's complaint page four and Officer Hamilton's affidavit page one) where he was identified as the robber by both Ms. Farrow and a witness named John Monroe (Officer Hamilton's affidavit page one). Plaintiff refused treatment for the effects of the mace offered by the Birmingham Fire and Rescue Service who came to the scene of the arrest (Officer Hamilton's affidavit page two). Plaintiff was taken to the East Precinct where he was questioned about the robbery (plaintiff's complaint attached page one and Officer Hamilton's affidavit page one). Robbery

Detective Fisher was notified and the stolen money was returned to the store (Officer Hamilton's affidavit page one). Plaintiff had been videotaped robbing the store and the tape was given to Officer Hamilton who turned it, along with the gun taken from plaintiff, into the police department's property room (Officer Hamilton's affidavit pages one and two).

While incarcerated in the Jefferson County Jail, plaintiff was required to sleep in a small cell which housed three inmates (plaintiff's complaint attached page one). Plaintiff got into fights with his cellmate (plaintiff's complaint attached page one). There was little room in the dayroom (plaintiff's amended complaint Document # 14 page four). The jail was extremely noisy causing plaintiff to suffer hearing loss and migraine headaches (plaintiff's complaint attached page one). Plaintiff had to sleep on the floor at some point during his incarceration at the jail which resulted in a backache (plaintiff's amended complaint Document # 14 attached page). During the period in which plaintiff was incarcerated at the jail, the jail's population exceeded an average of 1300 inmates (defendant Woodward's affidavit page one). Inmates were required to sleep on the floor due to the lack of bed space, but were provided with mattresses and blankets to make the temporary condition more bearable (defendant Woodward's affidavit page one). Plaintiff was written two major disciplinaries and sentenced to a loss of privileges even though he never went to disciplinary court (plaintiff's complaint attached page one). On April 14, 1998, two inmates got into a fight while plaintiff and other inmates were standing in the breakfast line. The inmates were sprayed with mace which got "all over everybody and all over our food tray" (plaintiff's complaint attached page four).

Plaintiff signed up for sick call on April 2, 1998 and was seen by Nurse Johnson for a head cold and weight loss (plaintiff's complaint attached pages two and four and defendant Whitehead's affidavit page one). During the visit, it was noted that plaintiff had lost 47 pounds in ten months

(defendant Whitehead's affidavit page one). Nurse Johnson told plaintiff that he would have to have an AIDS test (plaintiff's complaint attached page two). She referred him to Dr. Robertson and ordered an HIV test (defendant Whitehead's affidavit page two). Plaintiff was given Sudafed for his cold symptoms (defendant Whitehead's affidavit page two). Plaintiff was taken to see defendant Alexander who attempted unsuccessfully to obtain a blood sample from plaintiff for the HIV test (plaintiff's complaint attached page two). Plaintiff was returned to Nurse Johnson who also attempted to obtain a blood sample from plaintiff. Plaintiff informed Nurse Johnson that he had previously been shot in the stomach and that only half of his stomach remained. He informed Nurse Johnson that he needed to take vitamins and that he needed a high protein food tray. Plaintiff also told defendant Whitehead about his problem. Plaintiff told another unidentified doctor who told him that he would have to be weighed and that his medical records from Cooper Green Hospital would have to be sent to the jail (plaintiff's complaint attached page two). Plaintiff told defendant Whitehead that the relevant medical records would be at Children's Hospital not Cooper Green (plaintiff's complaint attached page two). Plaintiff told Nurse Johnson that he had seen the doctor and defendant Whitehead and that they were supposed to have placed plaintiff's medical chart in his file. Nurse Johnson checked plaintiff's medical file, but could not find his chart (plaintiff's complaint attached page four). Plaintiff was seen again on April 10, 1998, when he complained of a head cold, headache, and a runny nose. Plaintiff was given Tylenol and Chlortrimeton (defendant Whitehead's affidavit page two). Nurse Johnson noted no acute distress (defendant Whitehead's affidavit page two). On an unspecified date, plaintiff told defendant Morrow that Nurse Johnson had medication for him on her desk, but defendant Morrow stated that plaintiff could not get it (plaintiff's complaint attached pages two and three). Plaintiff also told Nurse Johnson that he needed

6

the medicine. Nurse Johnson told plaintiff that she would send it, but she did not (plaintiff's complaint attached page three). The medical records do not indicate any medication being prescribed for plaintiff outside of routine sick call during the period at issue in this action (defendant Whitehead's affidavit page two).

## DISCUSSION

### Claims Against Defendants Officer Jill Fisher and Officer Parnell

Plaintiff claims that defendants Fisher and Parnell used excessive force upon him, in violation of the Fourth Amendment, to effect his arrest on June 1, 1997. He claims further that defendants Fisher and Parnell violated his Eighth and Fourteenth Amendment right to medical care by refusing to take him to a hospital for treatment after spraying mace in his face.

In their sworn affidavits, Officers Robert E. Self and William E. Hamilton state that they alone arrested plaintiff on June 1, 1997, for the robbery of the Crown Service Station. Officers Hamilton and Self state in their affidavits that no other officers of the Birmingham Police Department were present at the time of plaintiff's arrest, particularly the officers named in plaintiff's lawsuit, Officer Jill Fisher and Officer Parnell (Officer Self's affidavit page one and Officer Hamilton's affidavit page two).

In determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. But, the process does not end there. In addition to the facts stated by the non-moving plaintiff, the court must also take into account those facts stated by the defendant which are not disputed by the plaintiff. Facts submitted by a defendant and not expressly disputed by the plaintiff cannot be ignored in the summary judgment calculus because they too exist as

7

"undisputed" facts. As the Supreme Court explained in *Celotex, supra,* the ultimate burden is on the plaintiff to come forward with evidence supporting each element of his claim. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendant which, if left undisputed, show that the plaintiff is not entitled to recover in the action. It is noted that although plaintiff was given the opportunity to rebut the evidentiary matters offered by the defendants in their special reports (See Document # 32) and he did in fact file a response to the special reports (Document # 30), plaintiff failed to dispute the statements made by Officers Self and Hamilton that defendants Fisher and Parnell were not present during his arrest on June 1, 1997 for robbing the Crown Service Station. Accordingly, defendants Officer Jill Fisher and Officer Parnell are entitled to summary judgment on plaintiff's claims that they used excessive force upon him, in violation of the Fourth Amendment, to effect his arrest on June 1, 1997 and that they violated his Eighth and Fourteenth Amendment right to medical care by refusing to take him to a hospital for treatment after spraying mace in his face.[3]

Denial of Due Process

Plaintiff claims that he was denied due process of law under the Fourteenth Amendment when he was written two major disciplinaries and sentenced to a loss of store, telephone, and

---

[3] It is noted that although plaintiff could have filed a motion requesting leave to amend his complaint to name the actual officers involved in the arrest as defendants, he did not do so. Therefore, there is no reason for the court to discuss in detail plaintiff's claims that he was subjected to excessive use of force during his arrest on June 1, 1997 and then denied medical treatment after he was sprayed in the face with mace during the arrest on June 1, 1997. Plaintiff's claims are due to be dismissed.

visitation privileges without a hearing. Plaintiff states that he had asked for a hearing, but was told by defendant Alexander that he would not get one.

The United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995) changed the landscape in the analysis of this type of case. Dealing with a case in which a prisoner in Hawaii sued prison officials under § 1983 alleging that he had been denied due process of law before being confined to disciplinary segregation for 30 days, the court concluded that segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration. As such, segregation did not amount to a grievous loss of a "substantive" interest protected by the Due Process Clause. Unlike the loss of good-time credits at issue in *Wolff v. McDonnell*, 418 U.S. 539 (1974), mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that ordinarily is not a major change in his living conditions. In concluding that placement in disciplinary segregation does not implicate due process, the Court held:

> We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Id.*, at 2302.

With the Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*. Placement in a one-man cell is not dissimilar to other forms of confinement found in jails, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur. As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement

9

nor is it a "major disruption in [prisoners'] environment." Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

The plaintiff in this action states that the only punishment he received was loss of store, telephone, and visitation privileges. Clearly, the temporary loss of privileges is not a "dramatic departure" from the ordinary conditions of confinement nor is the temporary loss of privileges a "major disruption in [prisoners'] environment." It follows then that there is no right to procedural due process of law before the imposition of a temporary loss of privileges. Therefore, neither the lack of due process nor any deficiency in the procedure actually used is actionable under the Fourteenth Amendment or § 1983. It is notable that plaintiff does not allege that he lost good-time credits already earned or accrued. While before *Sandin* plaintiff's claim may have sufficiently stated a due process claim under § 1983, *see, e.g. Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir., 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir., 1988), it no longer does. The defendants are entitled to summary judgment on plaintiff's claim that he was denied due process in connection with two disciplinaries.

Jail Conditions

Plaintiff claims that defendant Woodward violated his Eighth Amendment right to be free from cruel and unusual punishment by confining him in a jail that was overcrowded, lacked adequate security checks, and was too noisy.

In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and

unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, 502 U.S. 294, 303 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994). Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 502 U.S. at 290.

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). While it is the duty of jail officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons, *Rhodes v. Chapman*, 452 U.S. at 349. As the Eleventh Circuit Court of Appeals observed in *Newman*: "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." 559 F.2d at 291. "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988).

> [C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes v. Chapman*, 452 U.S. at 347.

11

"To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d at 1535. In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* at 1535 (*quoting Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986). *Accord Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Plaintiff complains that the jail was overcrowded while he was incarcerated there. He claims further that he was forced to sleep on the floor for an unspecified amount of time during his incarceration in the jail. Defendant Woodward acknowledges in his sworn affidavit that during the period in which plaintiff was incarcerated, the Jefferson County Jail was overcrowded and that some inmates were required to sleep on the floor, but those sleeping on the floor were provided with a mattress and a blanket. Defendant Woodward states further in his sworn affidavit that during the period of plaintiff's confinement in the Jefferson County Jail, he made budget requests, participated in a jail needs survey, and urged state and federal authorities to remove their "ready to transfer" inmates out of the Jefferson County Jail (defendant Woodward's affidavit pages one and two). It is clear that defendant Woodward was not indifferent to the overcrowding problems at the Jefferson County Jail and that he attempted to alleviate the problem. The court concludes that defendant Woodward took reasonable steps to provide inmates a place to sleep and make it reasonably comfortable. While plaintiff may have been uncomfortable sleeping on a mattress on the floor, "[a] prisoner's inconvenience and discomfort . . . fall outside the Eighth Amendment." *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986).

Plaintiff also claims that it was extremely noisy in the jail while he was incarcerated. While excessive noise may be annoying, it is not unexpected in a prison environment and plaintiff has failed to allege any facts to show that the noise reached the level of cruel and unusual punishment forbidden by the constitution.

Plaintiff claims further that the security at the jail was inadequate during his incarceration there. The law is now well established that prisoners have a right to be protected from the constant threat of violence by other inmates and that a failure by prison officials to control and separate prisoners who endanger the physical safety of others may amount to cruel and unusual punishment of any inmates so harmed by fellow inmates. *See Gullatte v. Potts*, 654 F.2d 1007 (5th Cir. 1981); *Hopkins v. Britton*, 742 F.2d 1308 (11th Cir. 1984). However, prison officials are not the insurers of the safety of inmates. *Jones v. United States*, 534 F.2d 53 (5th Cir.), *cert. denied*, 429 U.S. 978 (1976). "When officials are aware of a danger to an inmate's health and safety . . . it does violate the constitutional proscription against cruel and unusual punishment to fail to afford that inmate reasonable protection." *Gullatte v. Potts*, *supra*, at 1012. Not every isolated incident of violence by one inmate toward another rises to the level of a constitutional violation. To establish a deprivation of Eighth Amendment rights, a prisoner must show deliberate indifference on the part of the prison officials to the prisoner's need for reasonable protection from violence. *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983). Thus, the law requires only that prison officials who are aware or who should be aware of a threat to an inmate must act reasonably to provide that inmate protection from the danger.

Defendant Woodward, as the Sheriff of Jefferson County, was not the insurer of the plaintiff's safety. Plaintiff claims that there were fights involving inmates at the jail all the time because of

inadequate security. Plaintiff does not allege any facts which could form a basis for a finding that defendant Woodward could have anticipated an attack on plaintiff but was deliberately indifferent to his need for protection. The inmate fights that occurred at the jail were nothing more than isolated incidents which occurred without warning to either plaintiff or to defendant Woodward. At best, plaintiff alleges only that defendant Woodward was lax in performing his duties due to the fact that he did not provide adequate security at the jail.

Likewise, the plaintiff has not stated a due process claim against defendant Woodward. The Supreme Court held in *Daniels v. Williams*, 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986), "the due process clause of the Fourteenth Amendment is not implicated by lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." 474 U.S. at 347.

In accord with the above, plaintiff has failed to present facts to show that defendant Woodward was deliberately indifferent to the conditions in the jail. Plaintiff's claims regarding overcrowding, inadequate security, and noise are therefore due to be dismissed and defendant Woodward is entitled to summary judgment on these claims.

<u>Denial of Adequate Medical Treatment</u>

Plaintiff next claims that defendants Whitehead and Alexander violated his Eighth Amendment right to be free of cruel and unusual punishment by failing to provide him with medical treatment for a serious medical need on April 2, 1998 and that defendant Morrow violated his Eighth Amendment right to be free of cruel and unusual punishment by denying him access to medication prescribed for him on an unspecified date.

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991), quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan,* 550 F.2d 229 (5th Cir.), *cert. denied,* 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard,* 590 F.2d 105 (5th Cir. 1979). As stated by the *Estelle* Court, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm,* 639 F.2d 559 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981). Neither will a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble,* 429 U.S. at 106-8. Likewise, the disagreement between two doctors, as to the course of treatment, also does not state a violation of the Eighth Amendment, since there may be several acceptable ways to treat a medical condition. *White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990).

In *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. *Barfield v. Brierton*, 883 F.2d 923, 938 (11th Cir. 1989). Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every illness or injury invokes the constitutional protection -- only those that are 'serious' have that effect." *Evans v. San Quentin State Prison*, 1991 WL 438695, at *1 (N.D. Cal. Apr. 1, 1991), *quoting Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3rd Cir. 1976). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In *Estelle,* the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical torture or a lingering death," to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *Estelle*, 429 U.S. *1187 at 103. A "serious" medical need has been defined as "one that has either been diagnosed by a physician as requiring medical treatment, 'or one that is so obvious that even a lay person would recognize the need for a doctor's attention'" *Evans*, 1991 WL 43695, at *1, *quoting Laaman v. Helgemoe*, 437 F.Supp. 269, 311

(D.N.H. 1977). *See also Page v. Sharpe*, 487 F.2d 567, 569 (1st Cir. 1973). It is the necessity and not the desirability of medical treatment sought which is important to the determination of whether medical officials have exhibited deliberate indifference. *Woodall v. Foti,* 648 F.2d 268 (5th Cir. 1981).

With respect to plaintiff's claim that defendants Whitehead and Alexander violated his constitutional rights when they denied him medical treatment on April 2, 1998, plaintiff's undisputed medical records reveal that plaintiff signed up for sick call on April 2, 1998, complaining of a head cold and weight loss (plaintiff's medical records Document #25 Exhibit 1B). It is further undisputed that plaintiff was seen by Nurse Johnson. It is undisputed that during the sick call visit, Nurse Johnson noted that plaintiff had lost 47 pounds in ten months (defendant Whitehead's affidavit and plaintiff's medical records Document # 25 Exhibit 1B). Plaintiff states that Nurse Johnson told plaintiff that he would have to have an AIDS test. It is undisputed that Nurse Johnson referred plaintiff to Dr. Robertson and ordered an HIV test (plaintiff's medical records Document # 25 Exhibit 1B and defendant Whitehead's affidavit page two). It is further undisputed that plaintiff was given Sudafed for his head cold (plaintiff's medical records Document # 25 Exhibit 1B and defendant Whitehead's affidavit page two). Plaintiff states that he was taken to see defendant Alexander who attempted unsuccessfully to obtain a blood sample from him for the HIV test. He states that he was then returned to Nurse Johnson who also attempted to obtain a blood sample from him. Plaintiff states that he informed Nurse Johnson that he needed to take vitamins and that he needed a high protein food tray.

While plaintiff has shown that he had a serious medical condition, he has failed to show that the defendants were deliberately indifferent to his serious medical needs. Plaintiff does not contend

that he received no medical treatment in connection with his head cold and weight loss. In fact, plaintiff himself states in his complaint that he was examined by Nurse Johnson on April 2, 1998 and that she told him that he would have to have an AIDS test performed. Plaintiff states further in his complaint that Nurse Johnson sent him to defendant Alexander to obtain a blood sample and that when those attempts were unsuccessful, Nurse Johnson attempted to obtain the blood sample. It is clear from plaintiff's undisputed medical records that he was given Sudafed for his head cold and that was referred to a doctor for further examination. It is clear that plaintiff was not denied medical treatment, he was simply denied the medical treatment he requested. However, as previously noted, a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone does not give rise to a cause of action under the Eighth Amendment.

Plaintiff also claims that on an unspecified date, he told defendant Morrow that Nurse Johnson had medication for him on her desk. He states that defendant Morrow stated that plaintiff could not get the medication. In his sworn affidavit, defendant Morrow denies having denied plaintiff access to any medical care during his confinement in the Jefferson County Jail. In his sworn affidavit, defendant Whitehead states that plaintiff's medical records do not indicate any medication being prescribed outside of routine sick call for plaintiff during the period at issue here. In his affidavit in response to the defendants' special reports (Document # 30), plaintiff failed to rebut the statements made by the defendants in their sworn affidavits. Further, although given a second opportunity to respond to the defendants' motion for summary judgment (See Document # 32), plaintiff failed to respond to the statements. Plaintiff failed to state a specific date on which he alleges defendant Morrow denied him medication. He also failed to state what type of medication he was denied. Plaintiff failed to present any facts to support his allegation. Plaintiff's claim against

defendant Morrow is due to be dismissed because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). The undisputed facts establish that defendants Whitehead, Alexander, and Morrow were not deliberately indifferent to plaintiff's medical needs and are, therefore, entitled to summary judgment.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendants Officer Jill Fisher, Officer Parnell, Dr. Ned Whitehead, Nurse Brenda Alexander, Officer James G. Morrow, and Sheriff Jim Woodward are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Officer Jill Fisher, Officer Parnell, Dr. Ned Whitehead, Nurse Brenda Alexander, Officer James G. Morrow, and Sheriff Jim Woodward's motions for summary judgment are due to be GRANTED and this action against defendants Officer Jill Fisher, Officer Parnell, Dr. Ned Whitehead, Nurse Brenda Alexander, Officer James G. Morrow, and Sheriff Jim Woodward DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 1st day of October, 2002.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE